**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 3:25-86** |
| **ELI VALENTINE CALERO,** | : | **(JUDGE MANNION)** |
| **Defendant** | : | |

## MEMORANDUM

Pending before the court is defendant Eli Calero's motion to suppress evidence. (**Doc. 58**). For the reasons stated herein, the defendant's motion will be **DENIED**.

## I.    BACKGROUND

On January 14, 2025, the Monroe County Court of Common Pleas authorized the Pennsylvania State Police ("PSP") to install a GPS tracking device on a 2023 Chevrolet Silverado in the possession of defendant Eli Calero, and to monitor the vehicle's movements within the Commonwealth of Pennsylvania. (Doc. 66-1). The court order was issued pursuant to a finding of probable cause that the defendant was using the truck to traffic drugs. *Id.*

Two months later, on March 12, 2025, Troopers Lucas Kiernan and Andy Singh of the PSP conducted a traffic stop of the truck on Interstate 80 in Smithfield Township, Monroe County, PA.  According to the defendant, the

PSP officers must have tracked him outside of Pennsylvania and known that he was on his way back from New York via New Jersey, given that the stop occurred shortly after he crossed the NJ-PA border and that multiple police vehicles were present. According to the Government, the PSP officers merely "spot checked" the defendant and deduced that he would be returning via I-80.

Nevertheless, the PSP officers stopped the defendant pursuant to a suspected window tint violation. (Doc. 66-2 at 4). Upon approaching the vehicle, Tpr. Kiernan noted that there was "an overwhelming odor of air fresheners." *Id.* Tpr. Kiernan asked the defendant to exit the vehicle. From the officers' perspective, the defendant was "reluctant to answer questions about his whereabouts and his criminal history . . . [and] displayed elevated and sustained nervousness." *Id.* He also was unable to provide the name of the shop in the Bronx where he claimed his truck had undergone repairs two weeks prior as well as the night before, and Tpr. Singh "did not observe any new parts" despite his claims. *Id.*

Ultimately, the defendant did not consent to a search of the vehicle. Corporal Anthony Doblovasky of the PSP conducted a K-9 search of the vehicle's exterior, and the dog "alerted and indicated to the odor of narcotics." *Id.* at 5. The officers advised the defendant that the vehicle would be towed,

- 2 -

and that they would be applying for a search warrant for the vehicle. *Id.* He was then taken into custody, and 27 bags of cocaine, 9 bags of crack cocaine, and $1,013 in cash were found on his person. *Id.* That same day, PSP officers obtained and executed a search warrant on the vehicle. (Doc. 66-3 at 3). They seized 1,075 grams (2.4 pounds) of methamphetamine and 3 cell phones." *Id.*

On April 8, 2025, a superseding indictment was returned, charging the defendant with one count of conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §846, and one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §841. (Doc. 18).

On November 7, 2025, the defendant filed the present motion to suppress and an accompanying brief in support, arguing that the traffic stop was conducted pursuant to illegal GPS surveillance, rendering all derivative evidence seized "fruit of the poisonous tree," and that the stop was illegally extended without reasonable suspicion of criminal activity. (Docs. 58-59). On December 19, 2025, the Government filed its brief in opposition. (Doc. 66). On March 1, 2026, the defendant filed his reply to the Government's brief. (Doc. 84). On May 11, 2026, the Government filed a supplemental brief, arguing, for the first time, that the defendant did not have standing to file his

- 3 -

motion because the truck was stolen and he had no expectation of privacy in a stolen vehicle. (Doc. 97).

On May 13, 2026, the court held an evidentiary hearing. At the hearing, the Government offered the testimony of PSP Trp. George Tessitore, who investigated the alleged theft. He asserted that the 2023 Chevrolet Silverado had an altered vehicle identification number ("VIN"), and that the true VIN matched a Silverado that was reported stolen in Connecticut. He further testified that Calero then obtained title for the truck in Florida by submitting a fraudulent manufacturer's certificate of origin and a fraudulent purchase order. Calero then sold the vehicle to his own company Calero Towing LLC for $100, and obtained title in Pennsylvania using the fraudulent Florida certificate of title.

Following the hearing, the court ordered supplemental briefing on the issue of standing. *Id.* On May 20, 2026, the defendant filed a supplemental brief, (Doc. 101), and on May 26, the Government filed a response, (Doc. 102). The motion is thus ripe for disposition.

- 4 -

## II.    LEGAL STANDARD

The Fourth Amendment generally requires police to secure a warrant supported by probable cause before conducting a search, unless a recognized exception to the warrant requirement exists. *Lange v. California*, 594 U.S. 295 (2021).

Protection against unreasonable searches and seizures is enshrined in the Fourth Amendment, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The Fourth Amendment, like the other Amendments contained in the Bill of Rights, imposes direct limitations on the actions that may be taken by the Federal Government." *Adams v. Springmeyer*, 17 F.Supp.3d 478, 490 (W.D. Pa. 2014) (citing *McDonald v. City of Chicago*, 561 U.S. 742, 753-55, (2010)). The Fourth Amendment's purpose is to "safeguard the privacy and security of individuals against arbitrary invasions" by the government. *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 528 (1967). For purposes of the

Fourth Amendment, a search "occurs when an expectation of privacy that society is prepared to consider as reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Generally, a search "requires a warrant supported by probable cause." *Carpenter v. United States*, 585 U.S. 296 (2018) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (internal quotations omitted). An affidavit in support of a search warrant "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "[U]nder the reasonable expectation of privacy test, the Fourth Amendment protects against an unreasonable search of an area in which (1) a person exhibits actual, subjective expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable." *United States v. Ellis*, 270

- 6 -

F.Supp.3d 1134, 1140 (N.D. Cal. 2017) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)). "Under *Katz*, the capacity to claim Fourth Amendment protection does not strictly depend on a property right in the invaded place, but whether the person asserting the claim has a legitimate expectation of privacy." *Id.* (citations omitted).

"Under the exclusionary rule 'evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Lara-Mejia*, 482 F.Supp.3d 281, 293 (M.D. Pa. 2020) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). "This prohibition also applies 'to the fruits of the illegally seized evidence.'" *Id.* "The rule operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Id.* (citations omitted).

Generally, "the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted). "However, once the defendant has established a basis for his motion, i.e., the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *Id.* (citation omitted). Stated otherwise, where the

search or seizure was conducted without a warrant, the government "must establish by a preponderance of the evidence when the seizure occurred and that it was supported by reasonable suspicion." *United States v. Lowe*, 791 F.3d 424, 432 n. 4 (3d Cir. 2015). That is, the government then must show that the warrantless search falls within "certain reasonable exceptions." *Kentucky v. King*, 563 U.S. 452, 459 (2011).

## III.    DISCUSSION

In *Byrd v. United States*, the Supreme Court stated that, "'a person present in a stolen automobile at the time of the search may [not] object to the lawfulness of the search of the automobile.' . . . [because] [n]o matter the degree of possession and control, the car thief would not have a reasonable expectation of privacy in a stolen car." 584 U.S. 395, 409 (2018) (quoting *Rakas v. Illinois*, 439 U.S. 128, 141, n. 9 (1978)). Furthermore, in *United States v. White*, the Third Circuit joined "several other courts [that] have held that the possessor of a stolen vehicle lacks standing to challenge a search of the vehicle." 504 F.App'x 168, 172 (3d Cir. 2012) (citations omitted).

Here, the Government has sufficiently shown that the truck was, in fact, stolen. Indeed, the defendant concedes the point. (Doc. 101 at 3) ("Defendant concedes that . . . the Government produced sufficient evidence

- 8 -

at the evidentiary hearing in this matter that the vehicle was stolen"). Therefore, the defendant could not have had a reasonable expectation of privacy in the truck, and he lacks standing to challenge the search.

Nevertheless, the defendant argues that he has standing to challenge the search by distinguishing between his lack of a vehicular-based expectation of privacy, and his expectation of privacy in not being personally tracked. (Doc. 101). In making this distinction, the defendant cites to *United States v. Lopez*, where GPS tracking devices were placed on five vehicles that the defendant used to traffic drugs. 895 F.Supp.2d 592 (D.Del. 2012). Only one of the five vehicles was registered to the defendant; however, the court found that the defendant "would have a reasonable expectation of privacy that he would not be monitored over a seventeen day . . . period." *Id.* at 601. *Lopez*, though, is readily distinguishable from this case because it did not concern *stolen* vehicles. It merely considered the use of vehicles not registered to but permissibly used by a defendant. This distinction is akin to that made in *Byrd* between drivers of stolen vehicles, who do not have a reasonable expectation of privacy, and drivers of rented vehicles, who may. 584 U.S. at 409. Moreover, *Lopez* is a District of Delaware decision that predates the Third Circuit's ruling in *White*, as well as the Supreme Court's ruling in *Byrd*.

- 9 -

The defendant also argues that "[e]ven when individuals do not have a reasonable expectation of privacy in a vehicle, those individuals still have standing to challenge the ultimate search via challenging issues such as the length of a roadside detention or the initial stop of the vehicle because it also constitutes a seizure of their person." (Doc. 101 at 5) (citing *United States v. Jackson*, 120 F.4th 1210, 1219 (3d Cir. 2024)). The Government asserts this argument is an "attempt[ ] [by the defendant] to avoid his standing burden by arguing that he is challenging the stop of the stolen vehicle, which allows him to challenge the subsequent search." (Doc. 102 at 8).

The court finds that the defendant does have standing to challenge the legality of the stop. *See Jackson*, 120 F.4th at 1219 (finding that defendants who do not have standing to challenge the search of a vehicle still have standing to challenge the traffic stop itself because it constitutes a seizure, and that if the traffic stop which led to the search was illegal, then the fruits of a subsequent search may be suppressed). However, the stop here was lawful. The defendant had tinted windows, which provided the officers with grounds to stop the defendant, independent of any alleged "tracking" or "spot-checking" that may have occurred. *See United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) ("the Supreme Court [has] established a bright-

line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime").

While the defendant has standing to challenge the legality of the stop, his argument that the officers did not have reasonable suspicion to prolong the stop prior to the *Rodriguez* moment is futile. Even assuming they did not, it makes no difference as to the admissibility of the relevant evidence. The vehicle was stolen, and the defendant had no reasonable expectation of privacy with respect to it. Therefore, the officers did not need to have developed a reasonable suspicion of criminal activity on the part of the defendant to search the car. The fact that the vehicle was stolen gave the officers permission to search it once they had lawfully initiated the traffic stop. Thus, the search was lawful, the evidence seized therefrom is admissible, and the evidence seized deriving from the search, including the drugs seized from the defendant's person following his detention, are admissible.

- 11 -

- 12 -

## IV.    CONCLUSION

For the aforementioned reasons, the defendant's motion will be **DENIED**. An appropriate order shall issue.

MALACHY E. MANNION
United States District Judge

**DATE:**  5/28/26

25-86-01